Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001042
25-APR-2018
09:19 AM

NO. CAAP-14-0001042


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellant, v.
JAMES WELDON, also known as James William Weldon,
Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 13-1-1351)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Defendant-Appellee James Weldon also known as James William Weldon (Weldon) was charged in an amended complaint with carrying a deadly or dangerous weapon, namely, a collapsible metal baton or "billy," in violation of Hawaii Revised Statutes (HRS) § 134-51(a) (2011).[1] Weldon moved to suppress the metal baton, arguing that the police lacked reasonable suspicion for an investigative detention of him and that the metal baton should be suppressed as the fruit of his unlawful detention. The Circuit Court of the First Circuit (Circuit Court)[2] found that the police

---

[1]    HRS § 134-51(a) provides:

    Any person, not authorized by law, who carries
concealed upon the person's self or within any vehicle used
or occupied by the person or who is found armed with any
dirk, dagger, blackjack, slug shot, billy, metal knuckles,
pistol, or other deadly or dangerous weapon shall be guilty
of a misdemeanor and may be immediately arrested without
warrant by any sheriff, police officer, or other officer or
person. Any weapon, above enumerated, upon conviction of
the one carrying or possessing it under this section, shall
be summarily destroyed by the chief of police or sheriff.

[2]    The Honorable Lono J. Lee presided.

had reasonable suspicion to approach and investigate Weldon. The Circuit Court, however, granted Weldon's motion to suppress on the ground that "once [Weldon was] detained there was no reasonable suspicion for the police officers to search [Weldon's] backpack . . . ."

Plaintiff-Appellant State of Hawai'i (State) appeals from the "Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Evidence" (Suppression Order). On appeal, the State argues that the Circuit Court erred in suppressing the metal baton because it was discovered by the police as a result of a valid protective search for weapons.

As explained below, we conclude that the police had reasonable suspicion for an investigative detention of Weldon. We also conclude that the investigating officers had a reasonable basis to fear for their safety when Weldon appeared to grasp something inside his backpack and refused the officers' repeated requests to take his hand out of the backpack. Accordingly, the officers' concern for their safety justified one of them pulling the backpack away from Weldon, during which time the metal baton fell out and was exposed. We hold that the police's recovery of the metal baton was lawful and that the Circuit Court erred in granting Weldon's suppression motion.

BACKGROUND

I.

The State called Officers Gavin Heyworth (Officer Heyworth) and Officer Stanley Wilson (Officer Wilson) to testify at the hearing on Weldon's motion to suppress evidence. Weldon did not call any witnesses. The following evidence was adduced at the hearing.

In response to multiple community complaints, including complaints of a "high level of burglaries," the police routinely patrolled beachfront property along Coconut Avenue in Waikīkī. At approximately 7:00 a.m., while conducting a routine check of the area, Officer Heyworth walked along the beach side of the Kainalu Apartments on Coconut Avenue.

Officer Heyworth testified that he observed "discarded embers from a fire, . . . cooked meat strewn everywhere," and

empty beer bottles.[3]  Officer Heyworth testified that it was not permissible to have open containers of alcohol or solid waste, such as charcoal residue of an unextinguished fire, at that location on the beach.  He also stated that open fires were not allowed on the beach.

Weldon was about five to six feet away from the empty beer bottles, cooked meet, and fire embers, and he was laying down on a retaining/foundational wall that separated the apartments from the beach.  Weldon was the only person in the vicinity of these items.  When Officer Heyworth observed Weldon on the wall, Weldon was not drinking alcohol, eating food, using drugs, or defacing the wall with graffiti.

Officer Heyworth approached Weldon to investigate whether he was responsible for the items on the beach.  Officer Heyworth noticed that Weldon's eyes were a little red.  Officer Heyworth asked Weldon for his name and identification.  Weldon mumbled, was slow to respond, and appeared reluctant to provide the information.  By this time, Officer Wilson had arrived and joined Officer Heyworth.[4]  Weldon eventually reached into a backpack that was next to him, and he produced an identification card from the Veterans Administration.

After giving his identification card to the officers, and while the officers were examining the card, Weldon placed his hand back inside the backpack.  From the portion of Weldon's hand that was visible, Officer Heyworth "could see that [Weldon] had grasped something inside of that backpack."  Weldon's action of grasping an unknown object in his backpack created an officer safety issue.  Officer Heyworth repeatedly asked and then ordered Weldon to take his hand out of the backpack and to "[s]how me your hands."  Officer Wilson did the same thing.  Weldon, however, did not comply and refused to take his hand out of the backpack.  Officer Wilson "could see something dangerous was

---

[3]     Officer Wilson, Officer Heyworth's patrol partner, testified that he saw an "open . . . charcoal type grill," "food items that had been barbecued," and several glass bottles.  Officer Wilson stated that the glass bottles appeared to be "alcoholic type beverage [bottles] and maybe some soda bottles."

[4]     At some point, a third officer also arrived at the scene.

happening[,]" and he pulled the backpack away from Weldon. While doing so, a collapsible metal baton fell out.[5] Weldon picked up the baton, which extended as he lifted it. Weldon raised the baton to his right ear, and "brandished it in a manner as if to strike" Officers Heyworth and Wilson.

The baton was six to eight inches long when collapsed and about 12 inches when extended, with a steel knob at the end. The baton is used to strike people, and both Officer Heyworth and Officer Wilson recognized the baton as a deadly weapon.

Officer Heyworth told Weldon to drop the baton, but Weldon refused to comply. Officer Heyworth then advised Weldon that he was under arrest. The officers were able to take the baton away from Weldon and to handcuff him.

II.

Weldon filed a motion to suppress evidence, arguing that the officers' actions in approaching him and asking him for information constituted a seizure; that the police lacked reasonable suspicion to seize him to conduct an investigative detention; and that, therefore, all evidence obtained by the police, including the baton, should be suppressed as the fruit of an unlawful investigative detention.

The Circuit Court found that the police had reasonable suspicion to conduct an investigative detention of Weldon. The Circuit Court, however, granted Weldon's suppression motion on the ground that the police lacked reasonable suspicion to search Weldon's backpack. The Circuit Court found and concluded as follows:

1.     Police officers may stop and detain an individual if the officers have reasonable suspicion that the person stopped was engaged in criminal conduct.

2.     Police officers, in that situation, must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

3.     In this case, there was reasonable suspicion for the police officers to approach Defendant and investigate based upon past complaints of criminal activity in the

---

[5]     Officer Wilson testified that when he pulled the backpack away from Weldon, he saw the baton in Weldon's right hand, but then Weldon "accidentally dropped it."

4

area and the proximity of bottles, cooked meat, and extinguished fire to Defendant.

4. However[,] once detained there was no reasonable suspicion for the police officers to search Defendant's backpack based on the articulable facts and circumstances known at that time.

5. Therefore, the Defendant's Motion to Suppress Evidence is granted.

The Circuit Court filed its Suppression Order on July 8, 2014, and the State timely appealed pursuant to HRS § 641-13(7) (2016).

DISCUSSION

I.

The State argues that the Circuit Court erred in suppressing the metal baton on the ground that the police lacked reasonable suspicion to search Weldon's backpack. The State asserts that given Weldon's conduct in grasping something in his backpack and refusing the officers' repeated requests to take his hand out of the backpack, the officers had a reasonable basis to fear for their safety. Therefore, Officer Wilson's action in pulling the backpack away from Weldon, during which the metal baton fell out and was discovered, was justified as an action taken in pursuit of a valid protective search for weapons.

Weldon does not challenge the State's claim that the police had a reasonable basis to conduct a protective search for weapons and that the metal baton was discovered by the police during actions directed at protecting their safety. Instead, Weldon argues that the Circuit Court erred in determining that the police had reasonable suspicion to approach and question him and thereby subject him to an investigative detention in the first instance. Weldon claims that because his investigative detention was unlawful, the metal baton was properly suppressed as the fruit of an unlawful detention.[6]

II.

We apply the following legal standards and principles in evaluating the parties' arguments.

_____

[6] For purposes of our analysis, we assume, but do not decide, that Weldon was seized and detained when the police initially approached him and asked him for identification.

5

We review a trial court's ruling on a motion to suppress evidence "*de novo* to determine whether the ruling was 'right' or 'wrong.'" State v. Spillner, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007) (citation omitted).

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution.

Id.

With respect to investigative detentions, the Hawai'i Supreme Court has held:

> In the general interest of effective crime prevention and law enforcement, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); State v. Barnes, supra, [58 Haw. 333, 337, 568 P.2d 1207, 1211 (1977)]. Where, therefore, an officer is in possession of information, the reliability of which has been sufficiently established, or where he can point to specific and articulable facts which would warrant a man of reasonable caution to believe that criminal activity involving the suspect is afoot, the officer is authorized to make a temporary investigative stop. Id.

State v. Madamba, 62 Haw. 453, 456, 617 P.2d 76, 78 (1980). Stated another way, the police may temporarily seize or detain an individual to investigate possible criminal behavior "if they have a reasonable suspicion based on specific and articulable facts that criminal activity is afoot." State v. Kearns, 75 Haw. 558, 569, 867 P.2d 903, 908 (1994); State v. Dawson, 120 Hawai'i 363, 369, 205 P.3d 628, 634 (App. 2009).

While engaging in an investigative detention, police officers are entitled to take reasonable steps to protect their safety.

> Police officers need not risk a shot in the back by returning containers which they reasonably suspect contain a dangerous weapon but may lack probable cause to seize. See, 3 LaFave, Search and Seizure § 9.4(d) at 132-133 & n.128 (1978). As the United States Supreme Court has noted, "the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect." Adams v. Williams, 407 U.S. [407 U.S. 143, 146, 92 S.Ct. 1921, 1923 (1972)].

State v. Ortiz, 67 Haw. 181, 187, 683 P.2d 822, 827 (1984).

Accordingly, during an investigative detention, police officers are permitted to conduct a protective search for weapons where such action is required for the protection of the officers and others nearby.   Madamba, 62 Haw. at 457, 617 P.2d at 78.

> The hallmark of the protective weapons search sanctioned in Terry is the probable presence of a dangerous weapon.  Because a weapon is involved, the search need not be preceded by probable cause and a warrant if, from the specific conduct of the defendant, from reliable information, or from attendant circumstances, the police officer reasonably infers the person stopped is armed and presently dangerous.

Ortiz, 67 Haw. at 185, 683 P.2d at 826 (footnote omitted).   "The reasonableness of a weapons search is determined by balancing the State's interest in searching against the individual's interest in freedom from unreasonable government intrusions."  Id.   "[I]f the police have an objectively reasonable belief a detainee is armed, they may make a protective weapons search of the area or a container reasonably within the detainee's conceivable grasp." Id. at 189, 683 P.2d at 828.

In analyzing whether there is reasonable suspicion for an investigative detention and a reasonable basis for a protective search for weapons, we consider the totality of the circumstances and apply an objective standard of reasonableness. Spillner, 116 Hawai'i at 357, 173 P.3d at 504; Ortiz, 67 Haw. at 186, 683 P.2d at 826.

III.

Contrary to Weldon's contention, we conclude that the Circuit Court did not err in finding that the police had reasonable suspicion to approach Weldon and temporarily detain him for questioning.  At 7:00 in the morning, Officer Heyworth observed empty beer bottles, strewn cooked meat, and discarded embers from a fire on the beach in front of the Kainalu Apartments.  These items were in close proximity to Weldon, who was the only person in the vicinity.  Officer Heyworth's observations prompted him to approach Weldon to investigate whether Weldon was responsible for the items on the beach.

In general, it is a crime to possess an open container of intoxicating liquor on the beach.  See Revised Ordinances of Honolulu §§ 40-1.2, 10-1.1 (1990).  It is also a crime to

7

knowingly drop, place, or throw litter on any public or private property, except in designed locations and containers. See HRS § 708-829 (2014).[7]

We conclude that Weldon's close proximity to the open beer bottles, strewn cooked meat, and discarded fire embers on the beach constituted specific and articulable facts that provided the police with a reasonable suspicion that criminal activity involving Weldon was afoot. See Madamba, 62 Haw. at 456, 617 P.2d at 78. Accordingly, the police were entitled to approach Weldon and temporarily detain him for questioning. See State v. Melear, 63 Haw. 488, 493, 630 P.2d 619, 624 (1981) ("'A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at that time.'") (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)); State v. Silva, 91 Hawai'i 111, 118, 979 P.2d 1137, 1144 (App. 1999) (noting that "a request for identification and inquiry concerning the suspicious conduct of the person detained" are common investigative techniques used during an investigative detention) (citation omitted).

II.

The Circuit Court suppressed the metal baton based on its determination that the officers lacked reasonable suspicion to search Weldon's backpack. The State argues that the Circuit Court erred in this ruling, and we agree.

A.

Police officers may conduct a protective search for weapons during an investigative detention if the officers can reasonably infer from the detained person's specific conduct and from attendant circumstances that the person is armed and presently dangerous. See Ortiz, 67 Haw. at 185, 683 P.2d at 826. Officers are entitled to take reasonable steps to ensure their own safety and the safety of others:

---

[7] HRS § 708-829(2) defines litter to mean "rubbish, refuse, waste material, garbage, trash, offal, or debris of whatever kind or description, and whether or not it is of value, and includes improperly discarded paper, metal, plastic, glass, or solid waste."

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

State v. Uddipa, 3 Haw. App. 415, 419, 651 P.2d 507, 510 (1982) (quoting Terry, 392 U.S. at 24).

1.

In Uddipa, under circumstances similar to this case, we held that a police officer was justified in conducting a protective search for weapons. Officer Sunada, who had been dispatched to the scene of a reported fight, observed that Uddipa "appeared to be either 'trying to stuff something down' or trying 'to get something out from the waist band of his pants.'" Id. at 416, 651 P.2d at 508-09. Officer Sunada "'had an idea it was possibly a weapon.'" Id., 651 P.2d at 509. Officer Sunada quickly approached Uddipa. Id. As Uddipa's hand was moving in the area of his waist band, Officer Sunada grabbed Uddipa's arm and pulled it away from the waist band. Id. Officer Sunada then touched Uddipa's waistline area, felt a hard object, and pulled Uddipa's pants away from his body, which caused a pistol to fall to the floor through Uddipa's pants leg. Id.

This court held that Officer Sunada's actions were proper and justified as a necessary measure to determine whether Uddipa was in fact carrying a weapon and to neutralize the threat of physical harm. Id. at 418-19, 651 P.2d at 510. We concluded that Officer Sunada "should not be denied the opportunity to protect himself and [another officer] from attack by a person suspected of carrying a weapon." Id. at 419, 651 P.2d at 511. We further concluded that Officer Sunada "was not required to await the 'glint of steel' to protect his safety." Id.

2.

In Ortiz, Officer Bennett observed Ortiz at 2:00 in the morning carrying a knapsack across a parking lot next to business establishments. 67 Haw. at 182, 683 P.2d at 824. When Ortiz saw Officer Bennett's police car, he ran to the side of one of the buildings. Id. Officer Bennett found Ortiz hiding next to some

9

trash cans and boxes, with the knapsack next to Ortiz. Id. Officer Bennett asked Ortiz what he was doing there, and Ortiz said he didn't know. Id. When asked whose knapsack it was, Ortiz said it was his. Id. When Officer Bennett asked what was inside the knapsack, Ortiz responded, "Nothing" and grabbed for the knapsack with his right hand. Id. "Feeling 'something was wrong,' [Officer] Bennett reached down and took the sack away from Ortiz, immediately feeling 'what seemed like a butt of a handgun' through the thin fabric." Id. Officer Bennett unzipped the knapsack and discovered a handgun, which was later determined to be loaded. Id. The State subsequently charged Ortiz with being a felon in possession of a firearm. Id.

The supreme court overturned the trial court's suppression of the gun, holding that Officer Bennett had lawfully recovered the gun pursuant to a protective search for weapons incident to a valid investigative stop. Id. at 184-90, 683 P.2d at 825-30. The supreme court stated that there was "no question that the initial stop of Ortiz and seizure of his knapsack were valid." Id. at 184, 683 P.2d at 825-26. Ortiz had conceded in his appellate brief that Officer Bennett's initial stop of Ortiz and the seizure of the knapsack were valid, but attempted to repudiate this concession in oral argument. Id. at 184 n.3, 683 P.2d at 825 n.3. The supreme court held that regardless of Ortiz's concession, "Officer Bennett properly stopped Ortiz to question him and subsequently was justified in seizing the knapsack." Id. The supreme court reasoned:

> Here, Ortiz was in a business district at two o'clock in the morning and ran away after seeing Officer Bennett's police car. Officer Bennett was therefore entitled to stop and question Ortiz. When Ortiz grabbed for his knapsack after denying it contained anything, Officer Bennett's suspicion of criminal activity was justifiably heightened and he properly seized the knapsack. We would not require him to wait until Ortiz pulled the gun out of the knapsack and perhaps fired it before acting to protect himself.

Id. (emphasis added).

With respect to whether Officer Bennett was entitled to search the knapsack once he had removed it from Ortiz's immediate control, the supreme court held that Officer Bennett's warrantless search of the knapsack was reasonable and

10

permissible. Id. at 185-90, 683 P.2d at 826-30. The supreme court concluded that Officer Bennett "had a legitimate interest in searching the knapsack" to protect himself from the risk of being shot or attacked which "greatly outweighed Ortiz's rights in preventing the intrusion." Id. at 187-88, 683 P.2d at 827. The supreme court ruled that "if the police have an objectively reasonable belief a detainee is armed, they may make a protective weapons search of the area or a container reasonably within the detainee's conceivable grasp," but "may not search an area or container within their exclusive control or outside the detainee's reach." Id. at 189, 683 P.2d at 828-29. The supreme court concluded that the knapsack, although "outside Ortiz's immediate control, remained within his conceivable reach" and was not within Officer Bennett's exclusive control. Id. at 189, 683 P.2d at 829. It therefore held that Officer Bennett did not act unreasonably in immediately searching the knapsack. Id.

B.

"The State has a legitimate and weighty interest in the safety of its police officers," State v. Barrett, 67 Haw. 650, 656, 701 P.2d 1277, 1282 (1985), and "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." Terry, 392 U.S. at 23. Here, Officer Heyworth saw Weldon grasp something in his backpack, and Weldon refused to comply with Officer Heyworth's and Officer Wilson's repeated requests and demands to remove his hands from the backpack. Based on Weldon's conduct, the officers had a reasonable basis to infer that Weldon was armed and presently dangerous. See Barrett, 67 Haw. at 656, 701 P.2d at 1282 (concluding that if an arrested prostitute were "to make a move for [her] purse," the officers "would have an articulable suspicion that she may be armed").

The officers were not required to wait until Weldon pulled a weapon from his backpack before taking action to protect themselves. See Ortiz, 67 Haw. at 184 n.3, 683 P.2d at 825 n.3. They were not required "to await the 'glint of steel'" before taking action to protect their safety and neutralize the threat of physical harm. See Uddipa, 3 Haw. App. at 419, 651 P.2d at

511. We conclude that Officer Wilson's action in seizing the backpack from Weldon was a reasonable measure taken to ensure the officers' safety and was justified as an action taken in pursuit of a valid protective search for weapons. See id.; Ortiz, 67 Haw. at 184 & n.3, 683 P.2d at 825 & n.3.

In the course of Officer Wilson's lawful seizure of Weldon's backpack, the baton fell out of the backpack and was revealed. Weldon then picked up the baton and brandished it at Officers Heyworth and Wilson. Contrary to the Circuit Court's suggestion, the baton was not discovered during a search of Weldon's backpack by the officers, but was discovered in the course of Officer Wilson's lawful seizure of the backpack. Given the totality of circumstances, we conclude that the officers' recovery of the metal baton did not violate Weldon's constitutional rights and that the Circuit Court erred in granting Weldon's suppression motion and in suppressing the baton.

CONCLUSION

Based on the foregoing, we vacate the Suppression Order, and we remand the case for further proceedings.

DATED: Honolulu, Hawai'i, April 25, 2018.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge